# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No.

JEFFREY BECKMAN, M.D.,

**Plaintiff,**

     -vs-

EMERGENCY SERVICE PHYSICIANS, INC. d/b/a US ACUTE CARE SOLUTIONS, a Colorado corporation, and U.S. ACUTE CARE SOLUTIONS HOLDINGS, LLC, a Delaware limited liability company,

**Defendants**.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Jeffrey Beckman, M.D., by his attorneys, Jester Gibson & Moore, LLP, hereby submits this Complaint against Emergency Service Physicians, Inc. d/b/a US Acute Care Solutions and U.S. Acute Care Solutions Holdings, LLC, and states as follows:

### PARTIES

1.    Plaintiff Dr. Jeffrey Beckman is an individual who resides in Jefferson County, Colorado.

2.    Defendant Emergency Service Physicians, Inc. d/b/a US Acute Care Solutions ("USACS") is a Colorado corporation, with its principal place of business at 8300 W. 38th Avenue, Wheat Ridge, CO 80033, United States.

3.    Defendant U.S. Acute Care Solutions Holdings, LLC ("USACS Holdings") is a Delaware limited liability company, with its principal place of business in Canton, Ohio.

## JURISDICTION AND VENUE

4.      This action arises in part under the False Claims Act (FCA), 31 U.S.C. §§ 3729 – 3733, and the jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in this Court, because defendant USACS is a resident of the State of Colorado and a corporation existing by virtue of the laws of Colorado, all actions complained of were carried out within the State of Colorado, and Plaintiff was employed by and contracted with Defendants within the State of Colorado.

## FACTUAL ALLEGATIONS

6.      Dr. Beckman is a physician who is board-certified in emergency medicine, has been licensed to practice medicine by the State of Colorado continuously since 2001, and is a Fellow of the American College of Emergency Physicians.

7.      USACS is a company engaged in the business of contracting with hospitals to provide doctors to staff emergency rooms, in exchange for payment of various fees.

8.      Dr. Beckman and Defendant USACS entered into an employment agreement on July 1, 2016 (the "Employment Agreement" or "Agreement"). The Agreement is attached hereto as **EXHIBIT 1**.

9.      The Employment Agreement provided that USACS would employ Dr. Beckman to render emergency medical services at facilities with which USACS had contracted for emergency department staffing.

10.     Dr. Beckman worked in the Colorado West division of USACS, which provides emergency department staffing to facilities owned by SCL Health – Front Range, Inc. ("SCL").

11.     While employed by USACS, Dr. Beckman, with the knowledge and consent of

USACS, also served as Medical Director for a number of government agencies that provide Emergency Medical Services ("EMS"), including the Arvada Fire Department.

12.     SCL pays a stipend to USACS for the services that USACS physicians such as Dr. Beckman provide, both in- and out-of-hospital, to EMS agencies surrounding SCL's Lutheran Medical Center ("Lutheran"), including Arvada Fire.

13.     Due to this proximity, Arvada Fire frequently transports patients to Lutheran for emergency medical treatment.

14.     During the summer of 2019, Dr. Beckman raised with the leadership of USACS – Colorado West concerns with the way USACS's contract with SCL is structured, with respect to the provision of ancillary services to EMS agencies by USACS physicians.

15.     After a period of internal review, SCL proposed that it begin contracting directly with EMS agencies.

16.     Upon hearing this proposal, on September 16, 2019, at a meeting with USACS and SCL leadership in Lutheran's board room, Dr. Beckman raised concerns that the proposed contracting structure could cause violation of the federal Stark laws, 42 U.S.C. § 1395nn, and Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.

17.     During that meeting, Dr. Beckman explained that this proposal was likely to violate the Stark and Anti-Kickback Statutes because Lutheran would be in the position of directing the staff of the local fire departments to transport patients to Lutheran, for whose treatment Lutheran would be remunerated.

18.     Arvada Fire expressed similar concerns over the proposed agreements.

19.     SCL's legal department's ongoing review of the contract structure led to concerns

within USACS that income from SCL could be in jeopardy.

20.     On October 11, 2019, there was a meeting of USACS – Colorado West's physician staff, during which USACS's leadership raised the ongoing review by SCL of EMS agency arrangements.

21.     During this meeting, USACS' leadership expressed concern that the EMS-related revenue that USACS received from SCL was at risk.

22.     At that meeting, Dr. Beckman was openly blamed by members of the leadership and physician staff for putting the revenue at risk.

23.     Also during that meeting, USACS Vice President, Dr. Homi Kapadia, threatened Dr. Beckman that "there will be repercussions."

24.     Earlier in 2109, Centura Health had attempted to recruit Dr. Beckman to join the emergency medicine department in its St. Anthony's Hospital ("St. Anthony's"), but he turned them down in August.

25.     Following the October 11 meeting, Dr. Beckman reached out to Centura Health and quickly received confirmation that it remained interested in obtaining his services.

26.     USACS provides emergency department staffing to St. Anthony's and other Centura Health facilities, through its Mountain North division.

27.     Dr. Beckman informed the leadership of USACS – Mountain North of his desire to transfer to that division and begin working at St. Anthony's, and they expressed their support for that transition.

28.     On October 21, 2019, Dr. Beckman informed USACS – Colorado West of his intention to transfer to USACS – Mountain North.

29.     On October 24, 2019, USACS terminated Dr. Beckman, effective that day, without any prior notice.

30.     The Agreement provides that either party may terminate employment, with or without cause, "upon written notice to the other party of no less than ninety (90) days." **EXHIBIT 1**, ¶ VII.B.1.

31.     Dr. Beckman was terminated without advance notice.

32.     The Agreement only allows termination without advance notice for the limited grounds set forth in Section VII.B.2, including "any act or omission of Physician-Partner that […] constitutes a material act of dishonesty or fraud[,]" and "violation of the Practice's Code of Conduct and Ethics (as amended by the Practice from time to time) following exhaustion of any appeal or cure process provided for therein."

33.     The termination notice refers to "material dishonesty or fraud" and "violation of the Practice's Code of Conduct and Ethics" as grounds for Dr. Beckman's termination, without any further detail regarding what acts it is referencing.

34.     Dr. Beckman did not commit any act that constitutes a material act of dishonesty or fraud, as required for termination without advance notice.

35.     Nor did Dr. Beckman violate USACS's Code of Conduct and Ethics. Furthermore, Dr. Beckman was never subject to any proceedings related to an alleged violation thereof.

36.     For termination for "cause," the Agreement prohibits USACS from terminating Dr. Beckman until after he "has been provided with actual or constructive notice and, if capable of being cure, a reasonable opportunity to so cure." *Id.* at ¶ VII.B.3.

37.     Dr. Beckman was given no notice or opportunity to cure any alleged "cause" for

his termination.

38.     There was no "cause" for Dr. Beckman's termination, under the terms of the Agreement.

39.     The termination notice was hastily contrived pretext to terminate Dr. Beckman in retaliation for pushing back on proposed agreements that he believed would violate the Stark and Anti-Kickback Statutes.

40.     Dr. Beckman owns 209,912 common units of equity ("Units") in USACS Holdings, which is USACS's parent company.

41.     The Units are subject to the Amended and Restated Limited Liability Company Agreement of the U.S. Acute Case Solutions Holdings, LLC ("Operating Agreement").

42.     The Operating Agreement gives USACS Holdings an option to purchase the Units following Dr. Beckman's separation from employment.

43.     Pursuant to the terms of the Operation Agreement, if USACS Holdings exercises its option to purchase, the purchase price is to be Fair Market Value, as defined therein, unless Dr. Beckman's separation resulted from a termination for cause. If the separation resulted from a termination for cause, then the purchase price is to be $1.

44.     As a result of the dispute concerning whether Dr. Beckman was terminated for cause, there is a corresponding dispute between the parties concerning the price which USACS Holdings must pay to purchase the Units.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract – USACS)

45.     Dr. Beckman incorporates and realleges each of the allegations in the paragraphs above as if fully set forth herein.

46.     The Employment Agreement was a valid and enforceable contract between Dr. Beckman and USACS.

47.     USACS breached the Agreement when it terminated Dr. Beckman contrary to the provisions of the Agreement.

48.     USACS' breaches were a direct and proximate cause of Dr. Beckman' damages, which include but are not limited to lost income and the value of benefits, consequential damages, and forfeiture of USACS's ability to enforce the liquidated damages provision/restrictive covenants in the Agreement.

**SECOND CLAIM FOR RELIEF**
**(Retaliation under the False Claims Act – USACS)**

49.     Dr. Beckman incorporates and realleges each of the allegations in the paragraphs above as if fully set forth herein.

50.     The False Claims Act's anti-retaliation provision, 31 U.S.C. § 3730(h), provides relief for an employee who was discharged or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee in furtherance of efforts to stop one or more violations of the False Claims Act.

51.     A physician's opposition to a contract believed to violate Stark laws or Anti-Kickback Laws is a proper basis for a claim under the FCA's anti-retaliation provision. *Tibor v. Michigan Orthopaedic Institute,* 72 F.Supp.3d 750 (E.D. Mich. 2014); *Ickes v. Nexcare Health Sys., L.L.C.*, 178 F. Supp. 3d 578 (E.D. Mich. 2016).

52.     Dr. Beckman voiced his reasonable, good faith belief that SCL's proposed arrangements with EMS agencies and USACS would violate Stark and Anti-Kickback Statutes.

53.     By voicing these concerns, Dr. Beckman both upset SCL – which by far is the

largest account and source of revenue for the division of USACS in which Dr. Beckman was employed – and caused SCL to reexamine existing arrangements pursuant to which it paid large stipends to USACS for EMS-related services.

54.    USACS retaliated against Dr. Beckman by terminating his employment.

55.    USACS's illegal retaliation entitles Dr. Beckman to double back pay, front pay or reinstatement, and attorney fees.

**THIRD CLAIM FOR RELIEF**
**(In the alternative to Plaintiff's False Claims Act claim – Wrongful Termination in Violation of Public Policy – USACS)**

56.    Dr. Beckman incorporates and realleges each of the allegations in the paragraphs above as if fully set forth herein.

57.    Dr. Beckman opposed and refused to participate in SCL's proposed illegal arrangement with USACS and local EMS agencies.

58.    The proposed arrangement was contrary to the Stark and Anti-Kickback Laws, specific statutes relating to public health, safety, or welfare, and would undermine clearly expressed public policy.

59.    Dr. Beckman was terminated for his opposition to and refusal to participate in the proposed arrangement.

60.    USACS was aware that Dr. Beckman opposed and refused to participate in the proposed arrangement because of his reasonable belief that such action was illegal.

61.    For his wrongful termination, Dr. Beckman is entitled to economic damages, damages for emotional distress, and punitive damages.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment – USACS Holdings)

62.     Dr. Beckman incorporates and realleges each of the allegations in the paragraphs above as if fully set forth herein.

63.     As owner of the Units, Dr. Beckman is a person interested under the Operating Agreement.

64.     A dispute has arisen under the Operating Agreement concerning the price which USACS Holdings must pay in order to purchase Dr. Beckman's Units.

65.     That dispute may be resolved by entry of a judgment declaring the rights of the parties under the Operating Agreement.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

a.  Back pay and actual damages in an amount to be shown at trial to compensate Plaintiff for lost wages, benefits, and employment opportunities;

b.  Reinstatement to the same or equivalent position, or front pay in an amount to be shown at trial;

c.  Damages for emotional distress and other non-economic damages;

d.  Statutory damages, as provided by the FCA;

e.  Attorneys' fee and costs, as provided by the FCA;

f.  A declaration that he remains owner of the Units and that USACS Holdings must pay Fair Market Value, as defined in and provided by the Operating Agreement, in order to purchase the Units; and

g.  Such other and further relief that this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff respectfully requests a jury trial on all questions of fact raised by this complaint.


Respectfully submitted this 27th day of April, 2020.

JESTER GIBSON & MOORE, LLP

*/s    Brian T. Moore*
Brian T. Moore, #28763
Rachel I. Tumin, #52500
1999 Broadway, Suite 3225
Denver, CO 80202
Attorney for Plaintiff